**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

| | | |
|---|---|---|
| **CERTIFIED MEDICAL WASTE, LLC,** | * | |
| **d/b/a ALLIED SERVICES** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **vs.** | * | **Civil Case No. 8:22-cv-450-AAQ** |
| | * | |
| **ENCOMPASS IT SECURITY** | * | |
| **SOLUTIONS, INC.** | * | |
| | * | |
| **Defendant.** | * | |
| | ****** | |

**MEMORANDUM OPINION AND ORDER**

This is an action to enforce an arbitration award arising out of a dispute over a contractual agreement.  Pending before the Court is Plaintiff Certified Medical Waste, LLC's ("Plaintiff") Motion for Default Judgment.  ECF No. 18.  For the reasons discussed below, the Motion shall be GRANTED, in part, and DENIED, in part.

**BACKGROUND**

The following facts are taken from the Plaintiff's Complaint and Motion for Default Judgment, including records attached to the Complaint from the underlying arbitration proceeding.

Plaintiff Certified Medical Waste, LLC d/b/a Allied Services is a Delaware-based company with its principal office in California.  ECF No. 1, at ¶ 1.  Defendant Encompass IT Security Solutions, Inc. ("Defendant") is a Maryland-based corporation with its principal place of business in Maryland.  *Id*. at ¶ 2.  The parties entered into a Secure Destruction Service Agreement ("Agreement") on or around May 1, 2020, pursuant to which Defendant would use Plaintiff as its exclusive waste disposal service provider at multiple locations.  *Id*. at ¶ 5.  Under the terms of the agreement, the parties agreed to arbitrate any disputes arising out of or relating to the agreement

1

and that such arbitration would be governed by the applicable state or federal arbitration law.[1] ECF No. 1-2, at 5 ¶ 15.  The contract also stated that, "in the event that it becomes necessary for Allied to enforce the terms of this Agreement, including but not limited to any action to collect sums due hereunder, Allied shall be entitled to an award of its reasonable attorney's fees, litigation expenses, and costs of collection."  *Id*., at 5 ¶ 14.

After a dispute regarding performance, the parties submitted to binding arbitration.  ECF No. 1, at ¶ 6.  In its initial demand for arbitration on December 10, 2020, Plaintiff filed for breach of contract and requested damages of $192,144.98.  *Id*. at ¶ 12.  Plaintiff modified this request on March 10, 2021, to request damages of $149,999.00.  *Id*.  *See* ECF No. 1-2, at 2.  On April 6, 2021, Retired Judge Susan G. Braden was appointed to arbitrate the proceedings: she issued a scheduling order on July 6, 2021 that resolved scheduling matters and determined that Utah state law applied to the arbitration pursuant to the parties' agreement mentioned above.  ECF No. 1, at ¶ 13.  *See* ECF No. 1-2, at 5 ¶ 15; ECF No. 1-3 at 7.  After the hearing on November 1, 2021, the parties submitted closing briefs: in its closing brief, Plaintiff requested attorney's fees and costs.  ECF No. 1, at ¶ 14.  *See* ECF No. 1-4, at 6.  In its closing brief, Defendant argued that an award of attorney's fees and costs was not appropriate because Plaintiff had rejected an offer to amicably cure and terminate the agreement, rendering the resulting litigation "not necessary" and thus not triggering the otherwise applicable attorney's fees provision.  ECF No. 1-5, at 5.  On November 22, 2021, the arbitrator issued a final binding award that read:

1. The claim of [Certified] is hereby granted in the amount of $80,199.06.
2. The administrative filing fees of the American Arbitration Association totaling $3,300.00 will be borne by the Parties equally.
3. The compensation of the Arbitrator totaling $7,887.50 will be borne

---

[1] Though the Arbitrator later determined that Utah law applied, the Agreement did not name a particular state.

2

by the Parties equally. Therefore, [Encompass] shall reimburse Claimant the additional sum of $5,593.75 for its share of said fees previously incurred by Claimant.

4. Attorney fees and costs will be borne by the respective parties.

THIS AWARD is in full settlement of all claims submitted in this Arbitration. Any claim not expressly granted herein is hereby denied.

ECF No. 1-1, at 2-3. Plaintiff alleges that Defendant has failed to pay anything towards judgment or the cost of arbitration. ECF No. 1, at ¶ 10. *See* ECF No. 1-6.

Plaintiff filed its initial complaint on February 23, 2022. ECF No. 1. The summons was returned executed on March 7, 2022. ECF No. 8. Plaintiff filed a Motion for Clerk's Entry of Default on April 28, 2022, ECF No. 15, which was granted on August 18, 2022. ECF No. 16. Plaintiff then filed the pending Motion for Default Judgment on January 10, 2023. ECF No. 18. Despite the entry of these documents, Defendant has failed to make an appearance, answer the Complaint, or otherwise take any action in this case.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 55(b) governs the entry of default judgments, which may be entered by the Clerk of the Court "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation," and the defendant is in default for failing to appear. Fed. R. Civ. P. 55(b)(1). The entry of default judgment is a matter within the discretion of the Court. *S.E.C. v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D. Md. 2005) (citing *Dow v. Jones*, 232 F.Supp.2d 491, 494 (D. Md. 2002)). Although "the Fourth Circuit has a 'strong policy that cases be decided on the merits,'" *Disney Enters., Inc., v. Delane*, 446 F.Supp.2d 402, 405 (D. Md. 2006) (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), "default judgment is available when the 'adversary process has been halted because of an essentially unresponsive party.'" *Id.* (quoting *Lawbaugh*, 359 F.Supp.2d at 421). Default judgment is

3

proper when a defendant is unresponsive.  *See Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 896-97 (4th Cir. 1987) (upholding a default judgment awarded where the defendant lost its summons and did not respond within the proper period); *Disney Enters.*, 446 F.Supp.2d at 405-06 (finding appropriate the entry of default judgment where the defendant had been properly served with the complaint and did not respond, despite repeated attempts to contact him).

When considering a motion for default judgment, the Court takes as true all well-pled factual allegations in the complaint, other than those pertaining to damages.   Fed. R. Civ. P. 8(b)(6); *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." (citation and internal quotation marks omitted)); *see* Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied.").  Under Fed. R. Civ. P. 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

In the Fourth Circuit, district courts analyzing requests for default judgment have applied the standards articulated by the United States Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), to determine whether allegations within the complaint are "well-pleaded."   *See, e.g., Russell v. Railey*, No. DKC-08-2468, 2012 WL 1190972, at *2-3 (D. Md. Apr. 9, 2012); *U.S. v. Nazarian*, No. DKC-10-2962, 2011 WL 5149832, at *2-3 (D. Md. Oct. 27, 2011); *Balt. Line Handling Co. v. Brophy*, 771 F.Supp.2d 531, 544 (D. Md. 2011).   Where a complaint offers only "labels and conclusions" or "naked assertion[s] devoid of further factual enhancement," the allegations therein are not well-pleaded and, consistent with the Court's discretion to grant default judgment, relief based on

those allegations should be denied.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 555).  *See, e.g., Balt. Line Handling Co.*, 771 F. Supp. 2d at 544-45 (internal quotation marks omitted) ("The record lacks any specific allegations of fact that 'show' why those conclusions are warranted.").

**ANALYSIS**

The Federal Arbitration Act "requires courts to enforce covered arbitration agreements according to their terms."  *Lamps Plus, Inc. v. Varela*, ⸺ U.S. ⸺, 139 S. Ct. 1407, 1412, 203 L.Ed.2d 636 (2019).   Where a plaintiff seeks default judgment of an arbitration award, the petitioner "must show that it is entitled to confirmation of the arbitration award as a matter of law."  *Choice Hotels Intern., Inc. v. Jai Shree Navdurga, LLC*, No. DKC-11-2893, 2012 WL 5995248, at *2 (D. Md. Nov. 29, 2012).

**I.      Jurisdiction**

Pursuant to 9 U.S.C. § 9:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.   If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

It is apparent that the Court has jurisdiction pursuant to the statute.  The parties submitted their dispute to binding arbitration, administered by the American Arbitration Association ("AAA").  ECF No. 1, at ¶ 6.  In the underlying agreement, the parties agreed "[a]ny dispute or matter arising in connection with or relating to this agreement shall be resolved by binding and final arbitration before the American Arbitration Association ("AAA")" and that the "exclusive

5

jurisdiction and forum for resolution of any such dispute shall lie in the state where the Customer is located at the closest AAA office." ECF No. 1-2, at 5 ¶15. Defendant is based in Maryland. *Id*. at 4. On November 1, 2021, after receiving briefing and hearing argument from both parties, the Arbitrator issued an award in favor of Plaintiff. ECF No. 1, at ¶ 6. The arbitration took place in Maryland. ECF No. 18-1, at 5. On February 23, 2022, Plaintiff sought relief in this Court – well within the one-year period allowed by the FAA. ECF No. 1. Finally, the parties, based separately in California and Maryland, are diverse, and the amount Plaintiff requests is in excess of $75,000 as 28 U.S.C. § 1332 requires.

## II.       Default Judgment and Damages

Plaintiff requests a default judgment that includes either a modification of the arbitration award to include attorney's fees or, in the alternative, an award of damages as specified by the arbitrator. For the reasons discussed below, I find that a default judgment confirming the arbitrator's award without modification is appropriate.

As the Fourth Circuit has explained:

> Review of an arbitrator's award is severely circumscribed. Indeed, the scope of review of an arbitrator's valuation decision is among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all – the quick resolution of disputes and the avoidance of the expense and delay associated with litigation. Federal courts may vacate an arbitration award only upon a showing of one of the grounds listed in the Federal Arbitration Act, or if the arbitrator acted in manifest disregard of law.

*Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc.*, 142 F.3d 188, 193 (4th Cir. 1998) (internal footnotes omitted).

"If there is a valid contract between the parties providing for arbitration, and if the dispute resolved in the arbitration was within the scope of the arbitration clause, then substantive review

is limited to those grounds set forth in § 10 of the Federal Arbitration Act." *Jai Shree Navdurga*,

2012 WL 5995248, at \*3.   Section 10 of the FAA allows vacatur of an arbitration award only:

> (1)   where the award was procured by corruption, fraud, or undue means;
> (2)   where there was evident partiality or corruption in the arbitrators, or either of them;
> (3)   where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4)   where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).  In addition, courts may vacate or modify an arbitration award "under the common

law if the award 'fails to draw its essence from the contract' or 'evidences a manifest disregard of

the law.'"  *UBS Fin. Servs., Inc. v. Padussis*, 842 F.3d 336, 339 (4th Cir. 2016) (declining to

modify the award).  "Mere misinterpretation of a contract or an error of law does not suffice to

overturn an award."  *CK Franchising Inc. v Ford*, No. DKC-2007-1852, 2009 WL 10685352, at

\*1 (D. Md. Apr. 22, 2009) (citing *Upshur Coals Corp. v. United Mine Workers of Am., Dist. 31*,

933 F.2d 225, 229 (4th Cir. 1991)).  "The burden is on the party challenging an award to prove the

existence of one of the grounds for vacating the award."  *Id*.

      Default judgment is appropriate in this case.  Plaintiff has sufficiently established the

existence of a valid contract between the parties which Defendant then breached.  Further, while

Defendant did participate in the underlying arbitration, it has failed to participate in court

proceedings despite valid service of the Summons and the Clerk's Entry of Default.  Accordingly,

the entry of default judgment remains appropriate.

      However, Plaintiff does not merely ask for entry of Default Judgment and an order

awarding the amount awarded by the arbitrator.  Instead, it asks for modification of the award to

account for attorney's fees not awarded by the arbitrator.  This merits a more thorough discussion of the situations in which an award can be vacated or modified.

"[T]he scope of judicial review for an arbitrator's decision 'is among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all – the quick resolution of disputes and the avoidance of the expense and delay associated with litigation.'"  *Three S Del., Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 527 (4th Cir. 2007) (quoting *Apex Plumbing Supply*, 142 F.3d at 193).  "The party seeking to vacate an arbitration award bears a 'heavy burden.'"  *Interactive Brokers LLC v. Saroop*, 969 F.3d 438, 443 (4th Cir. 2020) (vacating the district court's decision to modify the award and remanding with instructions to confirm the original award).  Generally, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Star Development Group, LLC v. Darwin National Assurance Co.*, 813 Fed.Appx. 76, 83 (4th Cir. 2020) (citing *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).

Federal courts may vacate arbitration awards only upon showing of one of the grounds listed in the Federal Arbitration Act or if the arbitrator acted in manifest disregard of law.  *Apex Plumbing Supply*, 142 F.3d at 193.  "A court may vacate an arbitration award under the manifest disregard standard only when a plaintiff has shown that: (1) the disputed legal principle is clearly defined and is not subject to reasonable debate; and (2) the arbitrator refused to apply that legal principle."  *Interactive Brokers*, 969 F.3d at 442.  "In order to secure judicial relief on such grounds, it must be shown that the arbitrator, in making [their] ruling, was 'aware of the law, understood it correctly, found it applicable to the case before [them], and yet chose to ignore it in propounding [their] decision.'"  *Long John Silver's Restaurants, Inc. v. Cole*, 514 F.3d 345, 349

(4th Cir. 2008) (declining to modify the underlying award) (citing *Remmey v. PaineWebber, Inc*, 32 F.3d 143, 149 (4th Cir. 1994)).  *See also Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 236 (4th Cir. 2006) (vacating the award where the arbitrator explicitly stated that the "Management Agreement contained no explicit time limitation" but "nonetheless determined, however, that the Management Agreement 'necessarily contain[ed] an implied term limit'"); *Trademark Remodeling Inc. v. Rhines*, No. PWG-11-1733, 2012 WL 3239916, at *8 (D. Md. Aug. 6, 2012) (discussing the possibility that an arbitration award could be vacated for disregarding or modifying contract provisions, but finding that the plaintiff "presented no evidence that the arbitrator: (1) failed to discuss critical terminology; (2) disregarded or modified unambiguous contract provisions; or (3) applied his own personal notions of right and wrong in issuing his award").  The manifest disregard standard "is not an invitation to review the merits of the underlying arbitration." *Wachovia Securities, LLC v. Brand*, 671 F.3d 472, 483 (4th Cir. 2012) (declining to modify the award because the decision whether to apply "the FCPA's procedural requirements is a question that was itself not clearly defined and was certainly subject to debate").

   "[T]he Arbitration Panel's failure to explain its reasoning is not a sufficient ground to vacate."  *Star Development*, 813 Fed.Appx. at 86.  *See United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598 (1960) ("Arbitrators have no obligation to the court to give their reasons for an award.");  *Warfield v. Icon Advisers*, 26 F.4th 666, 673 (4th Cir. 2022) ("[A]rbitrators are not required to explain their reasoning.  But when arbitrators do not provide any explanation, we cannot simply impute manifest disregard" in deciding a motion to vacate the arbitration award) (internal citations omitted); *Upshur Coals Corp.*, 933 F.2d at 230 (upholding the arbitrator's decision to award certain health benefits because the arbitrators might have determined them to be appropriate, declining to "decide whether any of these analyses constitute

the best or most accurate reading of the contract," and holding that the arbitrators' decision was based on "plausible readings of the agreement."); *Star Development*, 813 Fed.Appx. at 86 (upholding the arbitration award despite the panel's failure to explain its reasoning and the award's non-compliance with the underlying contract because there was a discernable reason for the departure that "meets the low bar of our severely circumscribed review").

The Fourth Circuit uses the law of the forum in which the case was filed when determining whether an arbitrator has manifestly disregarded the law. *See Apex Plumbing Supply*, 142 F.3d at 193 (applying Maryland and Fourth Circuit law despite contractual choice of law provision specifying the application of Pennsylvania law).

This Court has upheld arbitration awards that contradict contractual attorney's fees provisions when the parties fail to completely prevail on all claims. *See CK Franchising*, 2009 WL 10685352, at *1 (declining to vacate an arbitration award that did not grant attorney's fees despite a contradictory contractual provision because the "arbitrator found that Plaintiff was not entitled to fees because it did not prevail on all of its claims or requests for damages"). In *CK Franchising*, the underlying Franchise Agreement stated that "the prevailing party will be entitled to recover reasonable compensation for preparation, investigation and court or arbitral costs or both and reasonable attorneys' fees." *CK Franchising*, No. DKC-2007-1852, ECF No. 28, at 3. Despite this language, this Court declined to vacate a monetary award and separate reduced award of attorney's fees because the plaintiff had "not met the burden to show why the award should be set aside" since they did not "show the arbitrator understood and willfully disregarded the law." *CK Franchising*, 2009 WL 10685352, at *2. *See also Padussis*, 127 F.Supp.3d at 499 (upholding arbitration award that did not include attorney's fees despite promissory note instructing otherwise

because it was "entirely possible that the panel concluded that UBSFS's undifferentiated fee request was unreasonable or insufficiently supported" and thus did not exhibit manifest disregard).

In this case, the arbitrator awarded Plaintiff roughly half of its claimed damages and did not award attorney's fees or costs despite contractual language between the parties permitting their award.  While the arbitrator did not explain why she did not award attorney's fees or costs, failure to do so is not itself grounds for vacatur.  The arbitrator could have relied on Defendant's briefing and found that Plaintiff had rejected possible alternatives to litigation given explicit language in the attorney's fees provision requiring enforcement to be "necessary".[2]  *See*  ECF No. 1-2, at 5 ¶ 14 (allowing the award of attorney's fees "*in the event it becomes necessary*") (emphasis added).  It is also plausible that the arbitrator found it was not appropriate to award attorney's fees in light of the measure of Plaintiff's victory.  The contractual language in this case mirrors that in *CK Franchising* in which this Court refused to alter a denial of fees.  The Court makes no determination as to whether these interpretations are legally correct.  But, since Plaintiff has failed to demonstrate manifest disregard in the context of these alternate explanations, it is inappropriate to vacate and modify the underlying award.  *See Warfield*, 26 F.4th at 673-74 ("[W]hen arbitrators do not explain how they reached a given result, a party seeking vacatur 'must show that it would be a manifest disregard of law to' reach that outcome by each and every conceivable route.") (citing *Interactive Brokers*, 969 F.3d at 444).

Plaintiff relies on two cases to argue that the award should be overturned for failing to draw its essence from the underlying agreement: both are readily distinguishable.  In *Patten*, the Fourth

---

[2] The Utah case on which Plaintiff relies emphasizes that although typically a Plaintiff will be a prevailing party, courts must look to the particular contractual language at issue.  *See Mountain States Broad. Co. v. Neale*, 783 P.2d 551, 555 (Utah Ct. App. 1989) ("Attorney fees are awardable only if provided for by statute or contract and, if by contract, only as the contract allows by its terms.").

Circuit found that the arbitrator acted in manifest disregard by implying a one-year limitations period into the parties' employment agreement despite a superseding agreement with contradictory terms. 441 F.3d at 236. Similarly, in *Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union*, the Fourth Circuit vacated an arbitration award where "the arbitrator blatantly ignored the unambiguous language of the Drug Policy and fashioned a modified penalty that appealed to his own notions of right and wrong." 76 F.3d 606, 610 (4th Cir. 1996). These cases are distinguishable because the arbitrators' decisions were in no way compatible with the underlying agreement. *See Media Gen. Operations, Inc. v. Richmond Newspapers Professional Association*, 36 Fed.Appx. 126, 133 (4th Cir. 2002) (upholding arbitral award because the award "reasonably can be interpreted in a way that draws its essence from the collective bargaining agreement"); *Frye v. Wild Bird Centers of America, Inc*., 237 F.Supp.3d 302, 308 (D. Md. 2017) ("Because both readings are plausible, the arbitrator did not disregard any 'plain and unambiguous' provisions of the Franchise Agreement") (citing *Patten*, 441 F.3d at 235); *Simkins Industries Inc v. United Steel Workers of America, Local 12993, AFL-CIO-CLC*, No. CCB-03-1384, 2004 WL 964275, at *8 (D. Md. May 4, 2004) (upholding arbitral award and rejecting analogy between the provision in *Mountaineer Gas* and the arbitrator's decision regarding whether the company had produced "substantial evidence of proof that the employee was guilty as charged prior to termination"). As discussed above, the arbitrator's refusal to grant attorney's fees in this case does not mirror the cases on which Plaintiff relies: the arbitrator could have agreed with Defendant's argument that Plaintiff was not entitled to collect in light of its refusal to resolve the matter without litigation or relied on Plaintiff's incomplete recovery. Given these plausible explanations, the arbitrator did not act in manifest disregard of the law. *See CK Franchising*, 2009 WL 10685352, at *2

("Arbitrator mistake is not grounds for vacating an arbitration decision.  Rather, Plaintiff must show the arbitrator understood and willfully disregarded the law.").

However, Plaintiff may recover attorney's fees spent pursuing this action in this Court. Maryland courts permit awards of attorney's fees for actions necessary to enforce an arbitration award.  *Star Development*, 813 Fed.Appx. at 89 (citing *Blitz v. Beth Isaac Adas Israel Congregation*, 352 Md. 31, 720 A.2d 912, 913-14 (1998)).  *See Knightsbridge, LLC v. DKW Communications, Inc.*, No. 8:19-cv-02381-PX, 2021 WL 593527, at *1 (D. Md. Feb. 16, 2021) (awarding attorney's fees associated with confirming an arbitration award and enforcing a default judgment).  Further, under the Maryland Uniform Arbitration Act ("MUAA"), prevailing parties can recover fees incurred with confirming and enforcing an arbitration award.  Md. Code Ann., Cts. & Jud. Proc. § 3-228 ("A court may award costs of the petition, the subsequent proceedings, and disbursements.").  Plaintiff also provided notice of its intent to seek fees in the Complaint, in compliance with Fed. R. Civ. P. 54(c).

"To properly calculate an attorney's fees award, courts undertake a three-step process: (1) determine a lodestar figure; (2) subtract fees for hours spent on unsuccessful claims unrelated to successful ones; and (3) evaluate the degree of success of the plaintiffs."  *Randolph v. PowerComm Constr., Inc.*, 780 Fed.Appx. 16, 21 (4th Cir. 2019) (per curium).  When assessing the reasonableness of requested fees and costs, "the Court employs the lodestar method of ascertaining 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'"  *Knightsbridge*, 2021 WL 593527, at *1 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).  In determining the reasonableness of the billing rates and hours worked to be used in a lodestar calculation, the United States Court of Appeals for the Fourth Circuit has directed courts to consider the following factors originally set forth in *Johnson v.*

13

*Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) (the "Johnson factors"):

> (1) the time and labor expended; (2) the novelty and difficulty of
> the questions raised; (3) the skill required to properly perform the
> legal services rendered; (4) the attorney's opportunity costs in
> pressing the instant litigation; (5) the customary fee for like work;
> (6) the attorney's expectations at the outset of the litigation; (7)
> the time limitations imposed by the client or circumstances; (8)
> the amount in controversy and the results obtained; (9) the
> experience, reputation and ability of the attorney; (10) the
> undesirability of the case within the legal community in which the
> suit arose; (11) the nature and length of the professional
> relationship between attorney and client; and (12) attorneys' fees
> awards in similar cases.

*Saman v. LBDP, Inc.*, No. DKC-12-1083, 2013 WL 2949047, at *6 (D. Md. Jun. 13, 2013) (citing

*Barber v. Kimbrell's Inc.*, 557 F.2d 216, 226 n. 28 (4th Cir. 1978)).  A court is not required to

separately analyze each of the *Johnson* factors if they are considered and addressed more broadly

at some point in the decision.  *See, e.g., Murrill v. Merritt*, No. DKC-17-2255, 2020 WL 1914804,

at *3 (D. Md. Apr. 20, 2020); *Imgarten v. Bellboy Corp.*, 383 F. Supp. 2d 825, 836 (D. Md. 2005).

The reasonable hourly rate requirement is typically met by compensating attorneys at the

prevailing market rates in the community: a court ordinarily looks to "the community in which the

court where the action is prosecuted sits."  *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169,

175 (4th Cir. 1994).  The court may rely on "affidavits from other attorneys attesting to the

reasonableness of the hourly rates," but also the court's "knowledge of the market."  *Beyond Sys.,

Inc. v. World Ave. USA, LLC*, No. PJM-08-921, 2011 WL 3419565, at *3-4 (D. Md. Aug. 1, 2011).

This Court's Local Rules provide presumptively reasonable hourly rates based on an attorney's

years of experience.  *See* D. Md. Local R. App. B(3) (2023); *Gonzalez v. Caron*, No. CBD-10-

2188, 2011 WL 3886979, at *2 (D. Md. Sept. 2, 2011) ("[G]enerally this Court presumes that a

rate is reasonable if it falls within these ranges.").  Based on the Local Rules, the following rates

are presumptively reasonable: $300.00 to $475.00 per hour for lawyers admitted to the bar for

14

twenty years or more, $225.00 to $350.00 per hour for lawyers admitted to the bar for between nine and fourteen years, $150.00 to $225.00 for lawyers admitted to the bar for fewer than five years, and $95.00 to $150.00 for paralegals and law clerks.  D. Md. Local R. App. B(3).

The Court has rejected attempts to significantly depart upwards beyond the rates provided in the guidelines by other attorneys, absent particular circumstances.  *See Ramnarine v. Rainbow Child Development Center, Inc.*, No. PWG-17-cv-02261, 2022 WL 16709764, at *5-7 (D. Md. Nov. 4, 2022) (rejecting request that an attorney with thirty-four years of experience be compensated at a rate of $600 per hour; that an attorney with twenty-three years of experience be compensated at a rate of $525 per hour; and that paralegals be compensated at a rate of $175 per hour); *Gaither v. Davi Transportation Services, LLC*, No. ELH-18-1447, 2020 WL 2614783, at *12-13 (D. Md. May 22, 2020) (rejecting request that an attorney admitted ten years ago be compensated at $550 per hour; that attorneys admitted three years ago be compensated at $300 and $315 per hour, and that paralegals be compensated at $260 per hour).  Where the Court has departed upwards, absent special circumstances, it has been in amounts less than that Plaintiff requests here.  *See Gaitan v. Ahmed*, No.: CBD-16-0303, 2016 WL 8670038, at *3 (D. Md. Jul. 15, 2016) ("As counsel represents, at counsel's hourly rates, the total fees amount to $12,593.50. If the Appendix B rates would have been applied, the total fees amount to $11,198.  As part of the settlement agreement, counsel is only requesting $7,000 in attorney's fees.") (internal citations omitted).

Plaintiff's counsel requests rates that differ substantially from those found presumptively reasonable under the Local Rules.  Tyler Cesar billed between $500.00 and $555.00 per hour, while the reasonable rate based on his experience would be between $225.00 and $350.00 per hour.  ECF No. 18-2, at ¶¶ 7, 19 (hours of experience and hours billed).  Lawrence Prosen billed

between $750.00 and $795.00 per hour, while the reasonable rate based on his experience would be between $300.00 and $475.00 per hour.  ECF No. 18-2, at ¶¶ 12, 19 (hours billed); *Lawrence M. Prosen*, COZEN O'CONNOR, https://www.cozen.com/people/bios/prosen-lawrence (last visited Aug. 29, 2023) (years of experience).  Marwa Katbi billed at $275.00 per hour, while the reasonable rate based on her experience would be between $150.00 and $225.00 per hour.  ECF No. 18-2, at ¶ 19 (hours billed); *Marwa Katbi*, HUNT ORTMANN, https://huntortmann.com/attorney/marwa-katbi/ (last visited Aug. 29, 2023) (years of experience). Melanie DeMattia billed at $265.00 per hour, while the reasonable rate for paralegals would be between $95.00 and $150.00 per hour.  ECF No. 18-2, at ¶¶ 11, 19 (level of experience and hours billed).  Only Heather Frisch billed within the reasonable rates for her level of experience, albeit at the upper range of the rates.  ECF No. 18-2, at ¶ 19 (hours billed); *Heather Frisch*, PIERCE KAVCIOGLU ESPINOSA & CESAR LLP, https://pkec.law/heather-frisch (last visited Aug. 29, 2023). Since counsel has not provided a particular reason for the upward departure, their fees will be adjusted using rates within the Guidelines.  *See International Painters and Allied Trades Industry Fund v. Interiors by Steve, Inc.*, No. JRR-21-229, 2023 WL 4446572, at *8 (D. Md. Jul. 11, 2023) (recommending a reduction in the fee award to reflect an hourly rate adjusted to conform with the Guidelines); *Monge v. Portofino Ristorante*, 751 F.Supp.2d 789, 800 (D. Md. 2010) ("When entering a default judgment, the Court may make an award of attorney's fees for a lesser amount than the moving party requested.").  However, given the extent of their experience and the outcome achieved for their client, the new fee award will be calculated using the upper end of the applicable rates.

Counsel supports their fee request with an affidavit from Mr. Cesar, ECF No. 18-2, and billing records related to the filing of the pending case and Motion, ECF No. 18-3.  Mr. Cesar

attests to a total of 62.5 actual and projected hours to collect on the award, file this Motion, and otherwise pursue this litigation.  ECF No. 18-2, at ¶ 19.  Using the hours attested to by Mr. Cesar and the permissible rates under the Guidelines, Plaintiff has adequately supported a recovery of $18,067.50 in attorney's fees for hours spent in pursuit of this action in federal court.

Additionally, Plaintiff may recover costs incurred as a result of pursuing this litigation.  *See Choice Hotels International Inc. v. Seven Star Hotels Group, LLC*, No. 8:22-cv-748-AAQ, 2023 WL 1928016, at *4 (D. Md. Feb. 10, 2023) (awarding costs associated with pursuing a motion for default judgment in court because the plaintiff alleged those expenses in the complaint).  In his Affidavit, Mr. Cesar attests to $969.50 in costs related to filing and serving process.  ECF No. 18-2, at ¶ 20.  Defendant had notice that Plaintiff would be seeking compensation for these costs in the complaint.  ECF No. 1, at 11.  These demands shall be awarded.

### III.    Interest

Plaintiff also argues that it is entitled to post-award, pre-judgment interest and post-judgment interest.  ECF No. 18-1, at 16-17.

Plaintiff seeks interest on the underlying arbitration award.  In a diversity case, prejudgment interest is a matter of state substantive law.[3]  *Knightsbridge*, 2020 WL 1638407, at *2 (citing *Hartford Underwriters Ins. Co. v. Trinity Prot. Servs. Inc.*, No. TDC-17-0129, 2017 WL

---

[3] Plaintiff cites Utah law in support of its position.  ECF No. 18-1, at 16-17.  As Plaintiff acknowledges, however, the arbitrator's decision as to the applicability of Utah law was limited to the conduct of the arbitration.  *Id.* at 13.  Plaintiff has failed to provide any argument or support that Utah law would apply in the context of efforts in federal court to enforce the arbitration result. Regardless, it is not clear that applying Utah law would have led to a divergent result.  In support of its request for pre-judgment interest, Plaintiff cites only *Youngs v. Behnken*, No. 1:04-CV-00183, 2006 WL 8457937 (D. Utah Sep. 14, 2006).  However, in that case, the award specified that payment was due within thirty days.  *Id.*, at *2; *Youngs*, No. 1:04-CV-00183, ECF No. 54-9, at 3. It did not state, as a matter of Utah law, that all arbitration awards shall be due within thirty days of judgment.

3205734, at *4 (D. Md. Jul. 28, 2017)).  *See Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 633 (4th Cir. 1999).  "Pre-judgement interest is allowable as a matter of right when 'the obligation and the amount due had become certain, definite, and liquidated by a specific date prior to judgment so that the effect of the debtor's withholding payment was to deprive the creditor of the use of a fixed amount as of a known date.'"  *Buxton v. Buxton*, 363 Md. 634, 656 (2001) (quoting *First Va. Bank v. Settles*, 322 Md. 555, 564 (1991)).

Since the underlying award does not specify a date on which payment became due, Plaintiff is not entitled to prejudgment interest on the arbitration award as a matter of right.  *See Bazan v. Preferred General Contracting, Inc.*, No. 532, Sept. Term, 2020, 2022 WL 17750247, at *3 (App. Ct. Md. Dec. 19, 2022) (denying request for prejudgment interest when the underlying arbitration award did not include a date on which defendants were obligated to pay plaintiffs); *Estate of Dorsey v. Kaplan Higher Education Corporation*, No. 1632, Sept. Term, 2019, 2022 WL 1618419, at *4 (Ct. Spec. App. Md. May 23 2022) (finding no error or abuse of discretion where the circuit court denied a request for post-judgment interest after confirming an arbitration award that did not provide for pre-judgment interest and did not set a due date for payment).  *Contra Knightsbridge*, 2020 WL 1638407, at *3 (awarding pre-judgment interest because the arbitration award became due on a fixed date "as made express in the arbitrator's written decision" and thus the refusal to pay "deprived Knightsbridge 'of the use of a fixed amount as of a known date'") (citing *Buxton*, 363 Md. at 656).

Regarding Plaintiff's demand for post-judgment interest, "the court need not specifically grant an award of post-judgment interest because Plaintiff is entitled to recover such interest by operation of law." *Jai Shree Navdurga*, 2012 WL 5995248, at *3; *see* 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court.").  Post-judgment interest will be

18

determined at the federal statutory rate and continues to accrue automatically until the judgment is satisfied. 28 U.S.C. § 1961(b). *See Knightsbridge, LLC*, 2020 WL 1638407, at *2.

**CONCLUSION**

For the aforementioned reasons, Plaintiff's Motion for Default Judgment and Confirmation of the Arbitrator's Award is GRANTED.  Plaintiff's Motion for Modification of the underlying arbitration award to incorporate attorney's fees is DENIED.  Plaintiff will be awarded a total of $104,829.81, composed of: $80,199.06 reflecting the resolution of the claim resolved in arbitration, $5,593.75 reflecting Defendant's share of the administrative filing and compensation fees related to arbitration, $18,067.50 reflecting Plaintiff's adjusted fees related to the Complaint and this Motion, and $969.50 reflecting Plaintiff's costs in bringing the Complaint and this Motion. Additionally, Plaintiff may collect post-judgment interest at the applicable statutory rate once judgment is satisfied.  Plaintiff's request for pre-judgment interest is DENIED.

So ordered.

Date:   September 1, 2023

_____/s/_____
Ajmel A. Qureshi
U.S. Magistrate Judge